IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TWANDA FINNEY,

                Plaintiff;

    v.

ANDREW SAUL, Commissioner of Social Security,

                Defendant.

Civil Action No. 19-1867-RGA

MEMORANDUM OPINION

Angela Pinto Ross, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington, DE, Attorney for Plaintiff.

David C. Weiss, UNITED STATES ATTORNEY, Wilmington, DE; Heather Benderson, Brian C. O'Donnell, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, Philadelphia, PA, Attorneys for Defendant.

August 7, 2020

1

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me are Plaintiff's motion for summary judgment (D.I. 14) and Defendant's cross-motion for summary judgment (D.I. 16). Plaintiff seeks an award of benefits in her favor or, alternatively, a reversal and remand for further review. I have reviewed the parties' briefing. (D.I. 15, 17, 18). For the following reasons, I will uphold the decision of the Commissioner.

## I.  BACKGROUND

This action arises from the denial of Plaintiff's claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] Plaintiff filed her benefits application for Supplemental Security Income on May 5, 2015. (Tr. at 178-186).[2] She alleged disability beginning February 27, 2014, due to cervical radiculopathy resulting from a motor vehicle accident. (*Id.* at 218). Her application was denied initially on July 15, 2015, and upon reconsideration on August 30, 2016. (*Id.* at 106-10, 116-20). Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ").

The ALJ held a hearing on July 10, 2018, at which he heard testimony from Plaintiff and a vocational expert. (*Id.* at 38-65). The ALJ issued a decision on August 21, 2018, concluding that Plaintiff has not been under a disability within the meaning of the Social Security Act for the relevant period and denying Plaintiff's claim for SSI. (*Id.* at 15-36). The ALJ found that, while Plaintiff could not perform her past work, she could perform a limited range of sedentary work available in the national economy.

---

[1] I refer to the record from the administrative proceeding (D.I. 10) as "Tr." The record is consecutively paginated and is referred to as "Tr. at ___."

[2] There is a discrepancy in the record about the date Plaintiff filed her benefits application. The ALJ's decision states that Plaintiff's application was filed on April 21, 2015. (Tr. at 18).

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the decision, making it a final decision reviewable by this court. (*Id.* at 1-6). Plaintiff filed this action on October 3, 2019. (D.I. 2).

## II.     LEGAL STANDARD

The Commissioner must follow a five-step sequential analysis when determining if an individual is disabled. 20 C.F.R. § 404.1520. The Commissioner must determine whether the applicant: (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) suffers from an impairment that meets a listing; (4) has the residual functional capacity (RFC) to perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520).

A reviewing court is limited to determining whether the Commissioner's factual findings are supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988). In reviewing whether substantial evidence supports the Commissioner's findings, the court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). The reviewing court must defer to the ALJ and affirm the Commissioner's decision, even if it would have decided the factual inquiry differently, so long as substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

The reviewing court must also review the ALJ's decision to determine whether the correct legal standards were applied. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. *Id.*

### III.   DISCUSSION

The ALJ found that Plaintiff had the following severe impairments: non-listing level bilateral lumbar foraminal stenosis, cervical radiculopathy, and major depressive disorder. (Tr. at 20). The ALJ found that Plaintiff had the following non-severe impairments: tachycardia, chest pain and palpitations, syncope, diabetes with mild retinopathy and suspected neuropathy. (*Id.*). The ALJ posed the following hypothetical question to the vocational expert:

> Assume a hypothetical individual who could occasionally and frequently lift 10 pounds; could stand and/or walk two hours out of an eight-hour day. Could sit six hours out of an eight-hour day. They could occasionally climb ramps and stairs. Occasionally climb ladders, ropes and scaffolds. And could occasionally balance, stoop, kneel, crouch and crawl. They would need to avoid concentrated exposure to vibration and hazards. They would be off task five percent of the workday. They would be able to remember, understand and carry out simple instructions and can tolerate only occasional changes in the workplace. […] Could a hypothetical individual like that perform any other work that exists in the national economy?

(*Id*. at 61) (cleaned up). The vocational expert responded that the hypothetical person could perform work such as an addressing clerk, type copy examiner, and call out operator. (*Id.* at 61-62). The ALJ then relied upon this assessment in his final determination. (*Id.* at 28-29).

In his decision, the ALJ stated:

> Overall, the evidence of record, including the claimant's reported pain relief with injections, blocks and a rhizotomy, as well as the no more than moderate findings on diagnostic testing, and improvement in physical examination findings with continued pain management, all supports a finding [that] the claimant remains capable of performing a reduced range of sedentary work. However, given her radicular symptoms in her right extremities, the claimant can only occasionally climb, balance, stoop, kneel, crouch and crawl, and requires the assistance of a cane to stand and walk. For safety purposes, the claimant should avoid concentrated exposure to vibration and hazards.

(*Id*. at 25-26). The ALJ concluded, considering Plaintiff's age, education, work experience, and RFC, she was capable of performing work in the national economy that existed in significant numbers, such as an addressing clerk, type copy examiner, and call out operator. (*Id.* at 29).

4

In support of her motion for summary judgment, Plaintiff argues that the hypothetical question relied upon by the ALJ and posed to the vocational expert was defective. (D.I. 15 at 9). Plaintiff argues that the question failed to account for Plaintiff's limitations related to the use of her right upper extremity and no "explanation was given as to why manipulative limitations were not considered." (*Id.*). Plaintiff asserts that the evidence supports that Plaintiff had limitations related to the use of her right upper extremity that would impact her ability to perform less than the full range of sedentary work.[3] (*Id*. at 11).

Defendant contends that the ALJ thoroughly considered Plaintiff's manipulative difficulties with her right upper extremity, but "reasonably found that Plaintiff's subjective complaints were not fully consistent with the record evidence demonstrating fewer functional limitations." (D.I. 17 at 2). According to Defendant, the ALJ was not required to include any limitations that he did not credit in his residual functional capacity finding or hypothetical question to the vocational expert. (*Id.*).

A plaintiff's RFC is her maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling ("SSR") 96-8p. A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or another similar schedule. The RFC assessment must include a

---

[3] Plaintiff contends that addressing manipulative limitations was important since, pursuant to Social Security Ruling 96-9p:
> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. [¶] Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

(D.I. 15 at 11).

5

discussion of the individual's abilities. *Id.*; 20 C.F.R. §§ 404.1545, 416.945; *Hartranft* 181 F.3d at 359 n.1. "[T]he ALJ's finding of [RFC] must be accompanied by a clear and satisfactory explanation of the basis on which it rests." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).

"The record before the ALJ is the touchstone for determining which limitations should be included in an RFC assessment." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007). "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." *Id.* The ALJ must consider all the evidence before him when making his RFC determination and must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). An ALJ does not have to include every alleged impairment, but only "a claimant's credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (internal quotation marks omitted). The ALJ's decision must be accompanied by a clear and satisfactory explanation of the basis on which it rests for this court properly to decide whether the ALJ's decision is based upon substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).

If a credibly-established limitation is not included within the hypothetical question, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-24 (3d Cir. 2002). Remand is required where the hypothetical question is deficient. *Rutherford*, 399 F.3d at 554; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

The ALJ determined that Plaintiff had the medically determinable impairment of cervical radiculopathy and acknowledged within his decision that she had decreased sensation in the right C8 dermatome, reduced grip strength, and ongoing radiating pain in her right arm even after treatment. (Tr. at 20, 24, 25). Despite finding Plaintiff's cervical radiculopathy as a severe impairment, the ALJ did not include any reaching, handling, or fingering limitations, i.e., manipulative limitations for Plaintiff's right upper extremity. *See id.* at 24-25. The only restrictions given for this impairment were related to use of the lower extremities. *See id*. at 25.

I understand dermatome to be "the area of sensory nerves near the skin that are supplied by a specific spinal nerve root."[4] "C8 helps control the hands, such as finger flexion [and] covers the pinky side of the hand and forearm."[5]

Plaintiff is right-handed. (*Id.* at 48). Evidence in the record includes notations supporting that the nerve damage impacted Plaintiff's ability to reach, handle, and finger with her right upper extremity. For instance, Plaintiff had difficulties using her right hand for bathing, combing her hair, cooking, and writing. (*Id.* at 248-49, 250, 279). Due to right arm pain and numbness, Plaintiff obtains assistance with everyday activities and personal hygiene. (*Id.* at 44, 47-48, 56,

---

[4] *Dermatome Definition*, SPINE-HEALTH (last viewed August 7, 2020), https://www.spine-health.com/glossary/dermatome
[5] *Cervical Spinal Nerves*, SPINE-HEALTH (last viewed August 7, 2020), https://www.spine-health.com/conditions/spine-anatomy/cervical-spinal-nerves

58). Evidence in the record also indicates that Plaintiff experienced some pain relief in her right upper extremity along with intermittent numbness. (*Id.* at 382, 386-87, 389-91, 923-60, 971-1003, 1185-1209). In August 2014 Dr. Witherell noted cervical extension caused right upper extremity pain, reduced motor strength in the right triceps and right grasp. (*Id.* at 390). Sensory exam was diminished to light touch and pinprick in the fingers and reflexes were absent in the triceps and biceps. (*Id.*). Dr. Woo noted that Plaintiff had reduced grip strength in the right arm in 2016. (*Id.* at 998).

Evidence in the record, cited in the ALJ's decision, indicates that Plaintiff experienced substantial pain relief after medical treatments. In March 2014, Dr. Cary reported that Plaintiff had restricted range of motion of her cervical spine to about 20% of normal. (*Id*. at 24, 344). Following a series of cervical transforaminal epidural steroid injections, Dr. Cary reported that Plaintiff had full range of motion of the cervical spine, although she continued to have decreased sensation to light touch in the right C8 dermatome. (*Id*. at 24, 316). In November 2014, Plaintiff reported 60% to 70% relief of her pain following transforaminal epidural steroid injections in October 2014 and a right cervical facet joint nerve blockade. (*Id*. at 24, 308, 382).

In April 2015, Dr. Bose reported that Plaintiff had 5/5 motor strength and intact pinprick sensation in her bilateral upper extremities. (*Id*. at 25, 353). In June 2015, Plaintiff told Dr. Cary that she still had some neck pain, but the numbness in her right upper extremity had improved since undergoing cervical injections with Dr. Witherell. (*Id*. at 650). By June 2016, Plaintiff reported 50 percent pain control of her radicular symptoms. (*Id*. at 25, 923). In December 2016, Dr. Woo indicated overall benign findings on physical examination, other than reduced grip strength on the right. (*Id.* at 25, 981). In November 2017, Plaintiff complained of back pain radiating into her right arm but, following a series of medical branch blocks, she reported some

relief of her symptoms. (*Id*. at 25, 1192, 1198, 1208, 1185). In June 2018, Plaintiff reported that she continued to have 70-80% pain relief. (*Id*. at 25, 1328).[6] Plaintiff consistently reported pain relief with her medications and no side effects. (*Id*. at 24-25, 978, 999, 1192, 1197, 1203).

The ALJ was required to explain his reasons for not including manipulative limitations related to Plaintiff's right-sided cervical radiculopathy. *See Fargnoli*, 247 F.3d at 41. In his decision, the ALJ noted that Plaintiff's initial symptoms of right arm pain and numbness improved with treatment, and the evidence supported a finding that Plaintiff was capable of performing a reduced range of sedentary work. (*Id*. at 25). Plaintiff points to evidence in the record of continued pain and numbness in her right upper extremity, stating that her pain ranged 7 out of 10 on a monthly basis. (D.I. 15 at 12; citing Tr. at 374-93, 923-60, 971-1003, 1185-1209). But "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

In *Stockett v. Comm'r of Soc. Sec.*, the district court remanded the case due to the ALJ's failure to consider manipulative limitations and provide any meaningful explanation for so doing. 216 F. Supp. 2d 440, 459 (D.N.J. 2016). The Court found that the determination by the ALJ not to assign any handling, fingering, or feeling limitations was unsupported by substantial evidence. *Id*. The record documented radiculopathy, hand and finger numbness and pain, and

---

[6] Plaintiff also argues that substantial evidence does not support the ALJ's RFC finding because it relied upon outdated non-examining physicians' opinions from 2015 and 2016. (D.I. 15 at 13). Plaintiff argues that a more comprehensive evaluation of her symptoms is warranted due to the submission of over 300 pages of evidence after the state agency reviews. (*Id.* at 14). Plaintiff contends that within these exhibits are records documenting various injections and a rhizotomy, along with records from Plaintiff's primary care physician. The ALJ, however, referenced physicians' opinions into 2018, and appears to have based his decision on the success of Plaintiff's pain management that resulted from her steroid injections and rhizotomy.

9

problems with fine motor skills. *Id.* But the ALJ's RFC determination was not accompanied by an explanation of why handling, fingering, or feeling limitations were not appropriate. *Id.* While the ALJ discussed certain of these records separately throughout his decision, he did not explain how he weighed the evidence and came to his ultimate determination. *Id.*

Similarly, in *Reynolds v. Colvin*, the district court remanded the case for "the ALJ to specifically address manipulative limitations [and] determine whether to incorporate such limitations into the RFC." 2017 WL 771256, at *6 (W.D. Pa. Feb. 28, 2017). The record revealed that, in addition to mild weakness in his left hand, which the ALJ acknowledged, the plaintiff had "mild left-sided hyperreflexia and decreased fine finger movements." *Id.* at *4. The plaintiff also had "decreased proprioception in the upper and lower extremities." *Id.* But the ALJ did not include any restrictions on fine finger movements in his RFC assessment and offered no explanation as to why. *Id.* The Court noted that the ALJ was not required to adopt all medical findings, and that he could have adopted some and rejected others in favor of contrary evidence in the record. *Id.* But before doing so, the ALJ was required to provide some explanation for why he was not adopting the documented restrictions regarding the plaintiff's ability to use his left hand. *Id.* Absent that, the Court could not say whether the ALJ failed to incorporate these limitations into his RFC for "no reason or the wrong reason." *Id. (*citing *Plummer*, 186 F.3d at 429). The case was remanded for the ALJ to specifically address the findings regarding Plaintiff's manipulative limitations and either incorporate them into his RFC assessment and the hypothetical posed to the vocational expert or explain why he was not adopting them. *Reynolds*, 2017 WL 771256, at *5.

Here, as in *Stockett*, there is evidence in the record which supports manipulative limitations for Plaintiff's right upper extremity. But there is also substantial evidence that

10

Plaintiff's right arm pain and numbness improved with treatment. And, unlike in *Reynolds*, the ALJ provided an explanation for why he was not incorporating manipulative limitations in his RFC finding, referencing Plaintiff's specific improvements in pain symptoms and mobility following medical procedures, and her overall "reported pain relief with injections, blocks and a rhizotomy." (Tr. at 24-25).

If substantial evidence supports the decision, the reviewing court must defer to the ALJ, even if it would have decided the factual inquiry differently. *See Hartranft*, 181 F.3d at 360. The ALJ's RFC finding explained that he found Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms to be inconsistent with the totality of the evidence of record. (Tr. at 24). The ALJ also specifically identified evidence in the record of improvements in Plaintiff's right arm pain related to her cervical radiculopathy. *See id.* at 24-25. Therefore, the hypothetical question to the vocational expert was not deficient and the ALJ's decision not to assign any manipulative limitations is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, I will deny Plaintiff's motion and grant Defendant's cross-motion for summary judgment. An accompanying order will be entered.